**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHARLIE MCDONALD (#M10260), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 18-cv-04606 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| ANTHONY WILLS, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Charlie McDonald, a prisoner at Menard Correctional Center, has brought this *pro se* habeas corpus action pursuant to 28 U.S.C. § 2254 challenging his 2009 murder conviction from the Circuit Court of Cook County. For the reasons that follow, the Court denies the petition on its merits and declines to issue a certificate of appealability.

**BACKGROUND**

State court factual findings, including facts set forth in state court opinions, have a presumption of correctness, and McDonald has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C § 2254(e)(1); *Tharpe v. Sellers*, 138 S. Ct. 545, 546 (2018); *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citations omitted). McDonald has not made such a showing. Accordingly, the Court draws the following factual history from the state court record (Dkt. No. 12) and state appellate court opinions.

Following a jury trial, McDonald was convicted of killing Isaac Pink. *Illinois v. McDonald*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *1 (Ill. App. Ct. Aug. 23, 2013) ("*Direct Appeal*"). Four eyewitnesses, including one of McDonald's friends, testified at trial that McDonald shot and killed the victim. *Id*. The first eyewitness, Jason Robinson, testified that on November

19, 2007, at approximately 4:30 p.m., he and a group of his friends, including the victim, were walking together towards a store. *Id*. On the way, the group came across eyewitnesses Travis Gordon and Kendall Vinson. *Id*. Gordon and Vinson continued with Robinson's group. At some point, Robinson saw a second group of men approach his group. *Id*. McDonald was one of the men in this second group. *Id*. Robinson and McDonald had been in an altercation two weeks earlier. *Id*.

As McDonald's group approached Robinson's group, Robinson witnessed one of McDonald's cohorts pass an object to him. *Id*. McDonald then confronted Robinson by drawing a gun from his pocket, pointing it at Robinson, and announcing that it was a "stickup" and to "give me what you got." *Id*. Robinson put his hands up, remained still, and did not say anything while McDonald pointed the gun at his head saying, "you think I'm playing?" *Id*. McDonald then pistol-whipped the victim across the face. *Id*. The victim responded by punching McDonald in the face. *Id*. McDonald stumbled backwards, caught his balance, and then shot the victim in the chest. *Id*. Robinson was about five inches from the victim when the shooting occurred. *Id*. Robinson fled from the scene. *Id*. He contacted the police later that day and identified McDonald in a photo array as the shooter. *Id*.

Gordon and Vinson, the other eyewitnesses in the victim's group, testified consistently with Robinson's testimony. *Id*. at *2. They explained that they were present at the shooting and identified McDonald as the shooter. *Id*. The two men also identified McDonald as the shooter to the police on the night of the shooting. *Id*.

The final eyewitness, Jamale Tyus, a friend of McDonald since grammar school, testified that he was in McDonald's group at the time of the shooting. *Id*. According to Tyus, McDonald showed him a gun prior to the shooting. *Id*. At some point, Tyus put McDonald's gun in his pocket,

but McDonald took the gun back after they came upon the victim's group. *Id*. Tyus testified consistently with the other eyewitnesses, explaining that McDonald drew the gun on Robinson and announced a stickup, McDonald struck the victim with the gun, a scuffle ensued, and McDonald shot the victim. *Id*. at *2–*3. Tyus said he was unaware of McDonald's intent to rob or shoot anyone prior to the incident. *Id*. at *3.

McDonald testified on his own behalf at trial. *Id*. He conceded that he confronted Robinson with a gun but claimed that it was Tyus's gun. *Id*. McDonald testified that his motive was to address threats that Robinson made to him following a fight several weeks earlier, and that there was no robbery. *Id*. McDonald admitted that he asked Robinson what he had in his pockets but claimed that was because Robinson initially had his hands in his pockets when McDonald confronted him. *Id*. Robinson then put his hands by his side, outside his pockets but never up in the air, according to McDonald. *Id*.

McDonald further explained that the victim attempted to intervene in his confrontation with Robinson. *Id*. McDonald testified that he attempted to backhand the victim with the gun, but the victim blocked him and then punched him in the face. *Id*. According to McDonald, the victim then grabbed him, attempting to wrestle him to the ground. *Id*. McDonald claims the gun went off during the confrontation but neither his finger nor the victim's finger was on the trigger when the gun fired. *Id*. McDonald explained that it was an accidental malfunction of the gun. *Id*.

The jury, disbelieving McDonald's version of events, found him guilty of first-degree murder. *Id*. It also found that McDonald personally discharged the firearm resulting in the victim's death. *Id*. He was subsequently sentenced to 25 years of imprisonment for the murder with an

additional 25-year enhancement for personally discharging the firearm, resulting in a 50-year prison sentence. *Id*.

McDonald argued on direct appeal that: (1) there was insufficient evidence to support his conviction; (2) the prosecution violated his due process rights by introducing evidence of his intent to rob Robinson and then dropping the robbery charge at the completion of the prosecution's case-in-chief; (3) his trial counsel was ineffective for failing to challenge the introduction of the robbery evidence; and (4) his sentence violated the Eighth Amendment. (Dkt. No. 12-8.) Finding no merit to those claims, the state appellate court affirmed the conviction and sentence. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *8. McDonald's petition for leave to appeal ("PLA") before the Illinois Supreme Court was limited to the Eighth Amendment challenge. (Dkt. No. 12-12). The PLA was denied by that court. *Illinois v. McDonald*, 3 N.E.3d 799 (Ill. Jan. 29, 2014) (Table). McDonald did not bring a petition for a writ of certiorari before the United States Supreme Court.

McDonald then brought a postconviction petition before the state trial court on August 12, 2014.[1] (Dkt. No. 12-15 at 48.) The postconviction petition alleged: (1) that the imposition of the 25-year sentencing enhancement was unconstitutional because the jury did not determine the factual issue that he personally discharged the firearm, and (2) ineffective assistance of appellate counsel on direct appeal for failing to raise the issue. *Illinois v. McDonald*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *1 (Ill. App. Ct. Nov. 3, 2017) ("*Postconviction Appeal*"); (Dkt. No. 12-15 at 49–51.) The state trial court issued a written opinion denying the petition on

---

[1] The August 12 date on which McDonald deposited the filing in his prison mail system provides the filing date under the prison mailbox rule of *Houston v. Lack*, 487 U.S. 266 (1988).

November 7, 2014. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *1; (Dkt. No. 12-15 at 55–59.)

Illinois state law requires that the state trial court clerk serve the prisoner with a notice of the dismissal of his postconviction petition within 10 days of the entry of judgment. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *3 (citing 725 ILCS 5/122-2.1(a)(2)). Apparently unaware of the November 7, 2014 denial of his postconviction petition, McDonald submitted three additional filings to the state trial court on November 21, 2014, adding 14 new postconviction claims, seeking discovery, and asking to proceed *in forma pauperis*. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *2; (Dkt. No. 12-15 at 62–114.)

The state trial court entered an order on January 22, 2015, striking McDonald's attempt to supplement his postconviction petition with the 14 new claims because the original petition had already been dismissed by that court's November 7, 2014 order, and McDonald did not mail his motion to supplement until 14 days later on November 21, 2014. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *2; (Dkt. No. 12-15 at 116–17.) The trial court also concluded that it could not reclassify McDonald's request to supplement his original petition to a new successive postconviction petition. *Id*. Finally, the state trial court denied the requests for discovery and *in forma pauperis* status in an oral ruling. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *2.

McDonald did not file a notice of appeal from the November 7, 2014 decision denying his postconviction petition. Instead, he filed a notice of appeal from the January 22, 2015 opinion striking his motion to supplement. (Dkt. No. 12-15 at 121.) McDonald argued in his postconviction

5

appeal that: (1) the state trial court clerk's failure to provide him with the required notice of the November 7, 2014 dismissal order prejudiced his ability to bring a potentially meritorious motion for reconsideration; and (2) his sentencing judgment (mittimus) should be corrected to reflect a single murder conviction. (Dkt. No. 12-16 at 2–3.)

The appellate court rejected McDonald's arguments regarding the court clerk's failure to provide notice of the November 7, 2014 order. Although the court clerk apparently did not send McDonald the required notice, the appellate court concluded that there was no prejudice from that error. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *3. The appellate court explained that a motion for reconsideration following the dismissal of a postconviction petition is used to raise newly discovered evidence, changes in law, or errors in the trial court's dismissal, but it cannot be used to raise new claims that were not presented in the original postconviction petition. *Id*. McDonald's motion to supplement—filed after the dismissal—was understood to be a motion for reconsideration, and an attempt to raise new claims could not qualify as a proper motion for reconsideration. *Id*. The appellate court did, however, grant McDonald's request to correct the sentencing judgment. *Id*. at *4.

McDonald's PLA raised the same two issues. (Dkt. No. 12-19.) The Supreme Court of Illinois denied the PLA ending the postconviction proceedings. *Illinois v. McDonald*, 95 N.E.3d 470 (Ill. Mar. 21, 2018). McDonald now brings the instant habeas corpus petition before this Court. (Dkt. 1.)

## DISCUSSION

McDonald's present habeas corpus petition argues: (1) the prosecution failed to prove its case beyond a reasonable doubt; (2) trial counsel provided ineffective assistance by failing to

object to the introduction of evidence regarding McDonald robbing the victim after the prosecution dropped an armed robbery charge; (3) McDonald's sentence violates the Eighth Amendment; and (4) McDonald is actually innocent. Respondent answers that the petition is untimely; Claims One, Two, and Four are procedurally defaulted; and all claims are meritless. (Dkt. No. 11.) The Court agrees.

## I.    Statute of Limitations

This case is governed by the statute of limitations set forth in 28 U.S.C. § 2244(d). The one-year limitations period starts on the latest of the following dates: (A) the date of completion of the direct appeal (or expiration of the time to bring the direct appeal), (B) the date of the removal of an unconstitutional state-created impediment that had previously prevented the filing of the petition; (C) the date of the recognition of a new constitutional right that has been made retroactive on collateral review by the Supreme Court of the United States; or (D) the date on which the factual predicate of the claim could have been discovered through due diligence. 28 U.S.C. § 2244(d)(1)(A)–(D). The one-year limitations period is tolled during the time when McDonald's properly filed application for postconviction or other collateral relief is pending in the state courts. 28 U.S.C. § 2244(d)(2).

The relevant date for calculating the one-year limitations period in this case is based on § 2244(d)(1)(A). The last event in McDonald's direct appeal was the denial of his PLA by the Illinois Supreme Court on January 29, 2014. *Illinois v. McDonald*, 3 N.E.3d 799 (Ill. Jan. 29, 2014) (Table). McDonald did not bring a petition for a writ of certiorari before the United States Supreme Court. Consequently, his direct appeal period was complete for purposes of § 2244(d)(1)(A), 90 days after the denial of his PLA, when his time for raising a certiorari petition expired. *Gonzalez*

*v. Thaler*, 565 U.S. 134, 653–54 (2012). McDonald's one-year limitations period thus commenced on April 29, 2014.[2]

McDonald filed his postconviction petition on August 12, 2014. (Dkt. No. 12-15 at 48.) One hundred and five (105) days ran against the one-year limitations period between the completion of direct appeal and the filing of the postconviction petition. The limitations period was tolled while the postconviction petition was pending before the state trial court. § 2244(d)(2).

Respondent argues that the postconviction petition stopped tolling for purposes of § 2244(d)(2) when the petition was dismissed on November 7, 2014. "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, ***provided that*** the filing of the notice of appeal is timely under state law." *Evans v. Chavis*, 546 U.S. 189, 191 (2006) (citing *Carey v. Staffold*, 536 U.S. 214 (2002)) (emphasis in original).

Under Illinois Supreme Court Rule 651, McDonald had 30 days to file an appeal following the dismissal of his postconviction petition on November 7, 2014. *Randall v. Duncan*, 244 F. Supp. 3d 782, 783 (N.D. Ill. 2016); *Illinois v. Fikara*, 802 N.E.2d 260, 265 (Ill. App. Ct. 2003) ("Illinois courts have held that an order that disposes entirely of a postconviction petition is immediately appealable . . . ."); *see also Illinois v. Savory*, 756 N.E.2d 804, 210–11 (Ill. 2001) (instructing that

---

[2] The Court recognizes that McDonald invokes *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012), in Claim Three. In *Montgomery v. Louisiana*, 577 U.S. 190 (2016), the Supreme Court held that *Miller* applies retroactively in collateral proceedings. The retroactive effect of *Miller* implicates § 2244(d)(1)(C) for the statute of limitations calculation. The § 2244(d)(1)(C) date is calculated based upon the date the right was recognized by the Supreme Court, not the date the Supreme Court held that the right was retroactive. *Johnson v. Robert*, 431 F.3d 992, 992 (7th Cir. 2005) (per curiam) (citing *Dodd v. United States*, 545 U.S 353 (2005)). *Miller* was decided on June 25, 2012, making that date McDonald's § 2244(d)(1)(C) date. As his § 2244(d)(1)(A) date of April 29, 2014 is later, the Court uses § 2244(d)(1)(A) date for the statute of limitations calculation.

an order disposing of a case is sufficient to commence notice of appeal period). Notably, the 30-day appeal period commenced with the November 7 entry of the dismissal order even though the state court clerk failed to provide McDonald timely notice of the order. *Illinois v. Perez*, 18 N.E.3d 41, 49 (Ill. 2014); *Illinois v. Brewer*, No. 2021 IL App (1st) 182638-U, 2021 WL 1998203, at *5 (Ill. App. Ct. May 18, 2021).

Despite McDonald not receiving timely notice of the November 7, 2014 dismissal, Illinois Supreme Court Rule 606(c) allowed him to seek an extension of time to bring an out-of-time appeal. In fact, Illinois courts automatically construe a late appeal following the failure to provide notice of a postconviction dismissal order as a request to bring an out-of-time appeal. *Brewer*, No. 2021 IL App (1st) 182638-U, 2021 WL 1998203, at *6.

The problem for McDonald is that he never brought a notice of appeal (timely or untimely) challenging the November 7, 2014 dismissal of his postconviction petition. Instead, he brought a notice of appeal challenging the state court's January 22, 2015 order denying his request to supplement his already dismissed petition. (Dkt. No. 12-15 at 121.) While addressing the lack of notice of the November 7, 2014 dismissal order, he did so only insofar as he was deprived of his ability to bring a motion for reconsideration. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *3–*4. McDonald did not argue in the state appellate court that the trial lack of timely notice of the November 7 dismissal order affected his ability to bring a timely appeal because he never brought an appeal from that order.

It is clear that McDonald did not bring a notice of appeal from the November 7 dismissal order. Respondent is correct that his postconviction proceedings ended with the dismissal in the state trial court. Multiple years ran between the November 7, 2014 dismissal order and the filing

of the instant habeas corpus petition in this Court in 2018. As a result, the habeas corpus petition is untimely.

McDonald's November 21, 2014 filings seeking discovery, leave to proceed *in forma pauperis*, and to amend the postconviction petition did not toll the limitations period either. Those documents were stricken by the state trial court because they were filed after the November 7 dismissal. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *3. The state court also declined to construe the documents as a request to bring a second postconviction petition. *Id*. The state trial court's final order addressing the November 21 documents was dated January 22, 2015. (Dkt. No. 12-15 at 117.) And McDonald's notice of appeal identified the January 22, 2015 order as the judgment being appealed. (*Id*. at 121.)

While the state court record may be unclear, this Court's understanding is that the appeal was taken from the January 22, 2015 order, not the November 7, 2014 order. The state appellate court denied the appeal explaining that McDonald was not prejudiced by the clerk's failure to provide him timely notice of the November 7 dismissal because McDonald had no right to raise new claims after the dismissal of his petition. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *3. Importantly, Illinois law holds that failure to receive timely notice of a postconviction dismissal is sufficient to satisfy the prejudice requirement and to allow an out-of-time appeal from that order. *Brewer*, No. 2021 IL App (1st) 182638-U, 2021 WL 1998203, at *5–*6. But the state appellate court in this case did not discuss that point, instead limiting its analysis to the fact that there is no right to bring a motion for reconsideration following a postconviction dismissal seeking to raise new claims. That the state appellate court limited its analysis to the motion for reconsideration and not the ability to bring a late notice of appeal

10

suggests that the state court considered McDonald's appeal to be only from the January 22, 2015 order. If McDonald was appealing from the November 7 order, the state appellate court should have found prejudice in terms of being unable to bring a timely notice of appeal, but it reached the opposite result. *See generally Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (instructing that state courts are presumed to "know and follow the law."). This conclusion is consistent with McDonald's notice of appeal only identifying the January 22, 2015 order and not mentioning the November 7, 2014 order.

With the conclusion that McDonald did not appeal the November 7 order, McDonald now faces a fatal defect in his postconviction proceedings as to the tolling of the federal statute of limitations. To toll the statute of limitations under 28 U.S.C. § 2244(d)(2), there must be both: (1) a properly filed application for state postconviction relief or other collateral proceeding with respect to the pertinent judgment or claim; and (2) the properly filed application must be pending for sufficient time to provide the necessary tolling of the statute of limitations period. *Id.* § 2244(d)(2). McDonald's postconviction petition meets the properly filed requirement, but it was dismissed by the November 7, 2014 order. McDonald's failure to bring an appeal from that order means tolling stopped after the dismissal.

The additional filings on November 21, 2014 cover the necessary time period but none of those filings was a "properly filed application" under 28 U.S.C. § 2244(d)(2). To qualify, the filing must involve a state court proceeding that allows a "judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall v. Kholi*, 562 U.S. 545, 553 (2011). The state trial court was clear that McDonald's postconviction process—the process used to reexamine McDonald's criminal judgment—ended with the November 7 dismissal order, and McDonald's

11

November 21 filings were not a proper continuation of that process nor did they initiate a new postconviction process. The November 21 filings were stricken as improper.

McDonald then erred by only appealing from the striking of those documents instead of seeking leave to bring an untimely appeal from the November 7 dismissal of his postconviction petition. That the November 21 documents were related to McDonald's conviction does not turn them into a proceeding that tolls the statute of limitations under § 2244(d)(2) because they did not result in a properly filed postconviction or other collateral proceeding. *Cf. Price v. Pierce*, 617 F.3d 947, 955 (7th Cir. 2010) (holding that motion for DNA testing does not toll limitations under § 2244(d)(2)).

In sum, each filing contains a necessary component for the other—the proceeding ending with the November 7 dismissal order is properly filed so it tolls the limitations period but it does not cover enough time. The November 21 filings (and appeals from their dismissal) span enough time to cover the limitations period but they do not toll the limitations period because they do not constitute a properly filed application as required by § 2244(d)(2). The two proceedings on their own fail to provide the necessary tolling, and characteristics of one (*e.g.*, properly filed or covering the necessary time period) cannot be transferred to the other to cure the defect. The result is that the instant habeas corpus petition is untimely.

Additionally, the record does not suggest grounds to equitably toll the statute of limitations. To obtain the benefit of equitable tolling, McDonald must demonstrate that: (1) he was diligently pursuing his rights, and (2) an extraordinary circumstance stood in his way. *Holland v. Florida*, 560 U.S. 631, 649 (2010).

12

In the instant case, the Court appreciates that the state court clerk failed to give McDonald timely notice of the November 7 dismissal order. Importantly, however, there is no dispute that McDonald received notice of the November 7 dismissal order via the January 22, 2015 state court order rejecting his attempt to bring supplemental claims in support of his postconviction petition. (Dkt. No. 12-15 at 115–16.) As discussed above, McDonald could have brought an out-of-time appeal from the November 7 dismissal order, which most likely would have been granted as a matter of course under Illinois law. *See Brewer*, No. 2021 IL App (1st) 182638-U, 2021 WL 1998203, at *5–*6. Instead, as discussed above, McDonald appealed from the January 22 order.

It was McDonald's mistake of appealing from the wrong order that results in the untimeliness of the instant federal petition. A prisoner is entitled to equitable tolling only when there is an "'external obstacle' [that creates] a barrier beyond a litigant's control." *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020). "Mistakes of law or ignorance of proper legal procedures are not extraordinary circumstances warranting invocation of the doctrine of equitable tolling." *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006) (citing *Williams v. Sims*, 390 F.3d 958, 960 (7th Cir. 2004)); *see also Perry*, 950 F.3d at 412 (explaining that prisoner can obtain proper legal information by looking up information in prison law library).

It is true that McDonald was represented by appointed counsel in his appeal from the January 22 order, and appointed counsel seems to have not fully recognized the issue of what order was being appealed. Indeed, the jurisdictional statement of McDonald's counseled opening brief states that the appeal is being taken from the January 22, 2015 order, "which confirmed the dismissal of [McDonald's] post-conviction petition and dismissed his supplemental post-conviction petition." (Dkt. No. 12-16 at 6.) Notably, there is no mention of the November 7 order,

13

and the opening brief argues that the appeal is timely because McDonald filed his notice of appeal from the January 22, 2015 order on February 17, 2015. (*Id.*) McDonald's appellate counsel compounded the error by arguing that McDonald was prejudiced with respect to his ability to bring a timely motion for reconsideration (which the state appellate court rejected) but failing to argue that McDonald was denied the right to bring a timely notice of appeal from the November 7 order. *Postconviction Appeal*, No. 2017 IL App (1st) 150735-U, 2017 WL 5145955, at *3. However, an attorney's legal mistake, such as misunderstanding applicable legal rules of procedure governing an appeal, does not provide a basis for equitable tolling. *Obriecht v. Foster*, 727 F.3d 744, 749 (7th Cir. 2013).

McDonald also argues that he is actually innocent. Actual innocence may provide a basis to equitably toll the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). McDonald believes he is actually innocent of first-degree murder and instead should have been found not guilty due to self-defense or convicted on the lesser charge of second-degree murder. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623–24 (1998) (citation omitted). McDonald, here, is not making a true actual innocence claim because he does not suggest the existence of facts demonstrating his innocence. To the contrary, he claims that the facts presented to the jury do not justify a first-degree murder conviction. That is a challenge to the legal sufficiency of the conviction, which does not sound in actual innocence.

McDonald also could not demonstrate actual innocence even if he had made the proper argument under the correct legal standard. To show actual innocence to defeat a default, McDonald must demonstrate that, "'in light of the new evidence, no juror, acting reasonably, would have

14

voted to find him guilty beyond a reasonable doubt.'" *McQuiggins*, 569 U.S. at 386 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *McQuiggins*, 569 U.S. at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). McDonald must present new, reliable evidence that was not presented at trial—such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324); *see McDonald v. Lemke*, 737 F.3d 476, 483–84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) ("[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'")). McDonald cannot demonstrate actual innocence because eyewitnesses identified him as the shooter and he presents no evidence to rebut their testimony. *Hayes*, 403 F.3d at 938. In short, the instant habeas corpus petition is untimely and cannot be saved by equitable tolling.

## II.     Procedural Default

In addition to the statute of limitations defense, Respondent argues that Claims One, Two, and Four are procedurally defaulted, and that Claim Three may also be defaulted depending on how the Court construes that claim. To preserve a claim for federal habeas corpus review, a prisoner must fairly present the claim through one complete round of state court review, including through a PLA before the Supreme Court of Illinois. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999); *Weaver v. Nicholson*, 892 F.3d 878, 886 (7th Cir. 2018).

Claim One (the prosecution failed to prove its case beyond a reasonable doubt) and Claim Two (ineffective assistance of trial counsel for failing to object to the introduction of evidence

regarding McDonald robbing the victim after the prosecution dropped an armed robbery charge), were raised before the state appellate court on direct appeal. (Dkt. No. 12-8 at 2–3.) However, those claims were not raised in McDonald's direct appeal PLA. (Dkt. No. 12-12.) Claim One and Claim Two were also not raised in McDonald's postconviction proceedings. Meanwhile, Claim Four (actual innocence) was not raised at any time in the state proceedings. As a result, those claims are all procedurally defaulted.

Claim Three raises an Eighth Amendment challenge to McDonald's sentence. The jury found both that McDonald was guilty of murder and that he personally discharged the firearm that caused the victim's death. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *4. He received 25 years for the murder plus a consecutive 25-year enhancement for personally discharging the weapon, resulting in a 50-year sentence. *Id*.

McDonald framed much of his Eighth Amendment claim before the state appellate court as a proportionality claim. (Dkt. No. 12-8 at 24.) The Eighth Amendment contains a narrow proportionality principle that prohibits the imposition of a sentence that is grossly disproportionate to the crime. *Ewing v. California*, 538 U.S. 11, 20–22 (2003). McDonald argued that he only faced a 20 to 60-year sentence for murder, yet the enhancement extended his possible sentence to 25 years to life. He believed it to be unconstitutional that he faced more time for using a gun (possibly life) than the maximum for the underlying murder (no more than 60 years).

McDonald's state appellate court challenge also invoked *Graham v. Florida*, 560 U.S. 48 (2010). *Graham* holds that the Eighth Amendment bars the imposition of a life sentence without the possibility of parole for a juvenile offender who did not commit a homicide crime. *Id*. at 82. *Graham* was subsequently extended in *Miller v. Alabama*, which holds that a mandatory life

sentence without the possibility of parole for a juvenile murderer violates the Eighth Amendment. 567 U.S. 460, 465 (2012).

Now, in Claim Three before this Court, McDonald references both the proportionality principle and *Graham/Miller*. Respondent argues that McDonald only raised the proportionality claim before the state court, and so only that issue is properly preserved before this Court. According to Resondent, any claim based on *Graham/Miller* is defaulted. This Court disagrees.

The prisoner must give the state court "a 'fair opportunity' to consider and, if needed, correct the constitutional problem." *Schmidt v. Foster*, 911 F.3d 469, 486 (7th Cir. 2018) (citing *Picard v. Connor*, 404 U.S. 270, 275–76 (1971)). "The 'bottom line' is whether 'in concrete, practical terms, the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on a federal basis.'" *Schmidt*, 911 F.3d at 486 (quoting *Kurzawa v. Jordan*, 146 F.3d 435, 442 (7th Cir. 1998); *Verdin v. O'Leary*, 972 F.2d 1467, 1476 (7th Cir. 1992)).

While McDonald's opening brief before the state appellate court focused primarily on the proportionality argument, he did invoke *Graham* and argue that he is less deserving of punishment because of his age. (Dkt. No. 12-8 at 25.) And his reply brief was much clearer in setting forth the *Graham/Miller* argument. (Dkt. No. 12-10 at 7–8.) Thus, the Court concludes that McDonald sufficiently alerted the state appellate court on direct appeal of his Eighth Amendment claim based on *Graham/Miller* as well as his proportionality claim. Moreover, McDonald's direct appeal PLA raised the *Graham/Miller* issue.[3] (Dkt. No. 12-12.) So McDonald has preserved all parts of his Eighth Amendment claim raised in Claim Three in the instant habeas corpus petition.

---

[3] McDonald's direct appeal PLA raised only the Eighth Amendment *Graham/Miller* issue and omitted the Eighth Amendment proportionality claim. Respondent's answer to the habeas corpus petition did not,

Turning back to the claims that he has defaulted, McDonald cannot excuse his default of Claims One, Two, and Four through a showing of cause and prejudice or a fundamental miscarriage of justice. Regarding cause and prejudice, cause requires an "'objective factor, external to [McDonald] that impeded his efforts to raise the claim in an earlier proceeding.'" *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013) (quoting *Smith v. McKee*, 596 F.3d 374, 382 (7th Cir. 2010)). Examples of cause include: (1) interference by officials making compliance impractical; (2) a factual or legal basis that was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

McDonald's counsel's failure to preserve Claims One and Two in the direct appeal PLA does not excuse the default. An ineffective assistance of counsel argument asserted to excuse a default must itself be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). McDonald has not exhausted any ineffective assistance of counsel argument to excuse the default of his claims. Moreover, ineffective assistance of counsel in that setting is not grounds for excusing a procedural default. *Contreras v. Lashbrook*, No. 17 C 3007, 2018 WL 888754, at *3 (N.D. Ill. Feb. 14, 2018) (noting that ineffective assistance of direct appeal PLA counsel does not excuse defaulted claims).

This leaves the fundamental miscarriage of justice (actual innocence) gateway to excuse McDonald's defaults. The Court previously held that McDonald could not demonstrate actual

---

however, argue that the failure to raise the Eighth Amendment proportionality claim in the direct appeal PLA resulted in a default but, to the contrary, conceded that the claim was properly preserved. (Dkt. No. 11 at 7–8.) Respondent has thus forfeited the argument. *See Cheeks v. Gaetz*, 571 F.3d 680, 686 (7th Cir. 2009) (explaining that procedural default is an affirmative defense subject to forfeiture).

innocence to excuse the untimeliness of this petition. The same reasoning applies to prevent him from invoking actual innocence to excuse his procedural defaults.

Claims One, Two, and Four are thus procedurally defaulted and McDonald cannot proceed on those claims here.

### III.    Merits Review

Even if all his claims were not untimely, and Claims One, Two, and Four were not procedurally defaulted to boot, all McDonald's claims would fail on their merits.

### A.    Claim One: Sufficiency of the Evidence

In Claim One, McDonald challenges the sufficiency of the evidence to support his conviction. This claim was resolved by the state appellate court on direct appeal, resulting in this Court's review being governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). *Harris v. Thompson*, 698 F.3d 609, 623 (7th Cir. 2012) (citing *Green v. Fisher*, 565 U.S. 34, 40 (2011); *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006)).

Under the AEDPA, this Court may not grant habeas relief unless the state court's decision on the merits is contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or the state court's decision is based on an unreasonable determination of facts. 28 U.S.C. § 2254(d). "The AEDPA's standard is intentionally 'difficult for Petitioner to meet.'" *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014); *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). This "'highly deferential standard [] demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford*, 537 U.S. at 24).

The Court applies a "twice-deferential standard" in reviewing the state court's ruling on the sufficiency of the evidence against McDonald. *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (per curiam). First, the Court must defer to the verdict. "'[I]t is the responsibility of the [finder of fact]—not the court—to decide what conclusions should be drawn from evidence admitted at trial.'" *Parker*, 567 U.S. at 43 (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). "The evidence is sufficient to support a conviction whenever, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Parker*, 567 U.S. at 43 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original). Second, the Court defers to the state court ruling. 28 U.S.C. § 2254(d). Here, the state court ruling is not contrary to clearly established federal law, as that court identified the proper legal standard. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *4. Equally, the state court's rejection of McDonald's sufficiency claim is not an unreasonable application of federal law.

A person commits first-degree murder in Illinois by unlawfully killing another by intending to do so, knowingly taking an action that will cause death to the victim, or taking an action that creates a strong probability of death or great bodily harm to the victim, or when the killing occurred during the course of a forcible felony. 720 ILCS 5/9-1(a). Multiple eyewitnesses testified that McDonald shot the victim after the victim punched McDonald during the course of his attempted robbery. A rational jury could have found that McDonald, angered that the victim struck him, intentionally shot the victim. While McDonald testified that the shooting was an accident, the jury clearly rejected his position by finding him guilty. There is sufficient evidence to support

McDonald's conviction, and so he cannot satisfy the demanding AEDPA standard. Claim One is thus denied.

### B.     Claim Two: Ineffective Assistance of Counsel

McDonald next argues in Claim Two that his trial counsel was ineffective for failing to object to the introduction of evidence that he attempted to rob the victim's group, as the state dropped the robbery charge in this case. This claim is governed by the AEDPA, as it was resolved by the state appellate court on direct appeal. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *6. And an ineffective assistance of counsel argument is governed by *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate ineffective assistance of counsel, McDonald must show both deficient performance and prejudice. *Premo v. Moore*, 562 U.S. 115, 121 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)). The Court's review under *Strickland* is deferential, and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles*, 556 U.S. at 123.

The state court properly rejected McDonald's claim. It correctly identified the governing *Strickland* standard. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *6. It also noted that there was no ineffective assistance of counsel because the challenged evidence was properly admissible as part of explaining the continuing narrative of the events leading to the murder. *Id*. The state court's ruling on a matter of state evidentiary law is binding on this Court. *Shaw v. Wilson*, 721 F.3d 908, 914 (7th Cir. 2013).[4] That finding dooms McDonald's ineffective

---

[4] Although the state court's evidentiary ruling is binding on this Court, it is worth noting that the evidence would be properly admitted under the Federal Rules of Evidence as well. *See United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006) ("Evidence falls within this doctrine—also referred to as the "inextricably intertwined" doctrine—if it helps to complete the story of the crime on trial, if its absence would create a chronological or conceptual void in the story of the crime, or if it is so blended or connected that it incidentally involves, explains the circumstances surrounding, or tends to prove an element of the charged

assistance of counsel claim because counsel cannot be faulted for failing to make a losing argument. *Carrion v. Butler*, 835 F.3d 764, 779 (7th Cir. 2016). Finally, McDonald cannot demonstrate prejudice, as there was overwhelming evidence of his guilt in the form of testimony from multiple eyewitnesses.

The state court's ruling is thus neither contrary to, nor an unreasonable application of, *Strickland*. Claim Two is denied.

### C.     Claim Three: Eighth Amendment Claim

Claim Three raises two Eighth Amendment issues: (1) a challenge to the firearm enhancement for his sentence; and (2) the *Graham/Miller* issue.

Turning first to the firearm issue, that claim was resolved by the state court on direct appeal resulting in it being governed by the AEDPA. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at *6. The Eighth Amendment contains a "proportionality" principle with two components: (1) certain sentences are deemed unconstitutionally excessive in light of the crime committed; and (2) certain sentences are *per se* prohibited in light of the crime and offender involved. *Graham*, 560 U.S. at 59-61. McDonald's argument implicates this first principle. McDonald believes his 25-year sentence enhancement for personally discharging the firearm that killed the victim is disproportionate when compared to his 25-year murder sentence. According to McDonald, murder is a greater crime than discharging a firearm, so it is disproportionate to punish the crimes equally. Additionally, the sentencing range for murder was 20 to 60 years, while he faced a range of 25 years to life for the firearm enhancement. That, too, shows a disproportionate penalty according to McDonald.

---

crime.").

A sentence is unconstitutional under the Eighth Amendment when it is "grossly disproportionate to the crime." *Ewing*, 538 U.S. at 23. For example, the Supreme Court has held unconstitutional a life sentence without the possibility of parole for a defendant's seventh nonviolent felony of passing a worthless check. *Graham*, 560 U.S. at 59 (citing *Solem v. Helm*, 463 U.S. 277 (1983); *see also Ewing*, 538 U.S. at 21 (noting that a life sentence without the possibility of parole for an expired parking meter would be unconstitutional). In contrast, a life sentence without the possibility of parole for possessing a large amount of cocaine, a sentence of 25 years to life for stealing a few golf clubs as a third strike under a three strikes law, a life sentence without the possibility of parole for obtaining money by false pretenses as a third strike under a three strikes law, and a 40-year sentence for possession with intent to distribute and distribution of marijuana have all been upheld by the Supreme Court as constitutional. *Graham*, 560 U.S. at 59–60. To evaluate whether a sentence is grossly disproportionate to the crime, the Court looks to the gravity of the offense and the severity of the sentence. *Id*. at 60. Only when that threshold comparison leads to an inference of gross disproportionality should the Court do a comparative analysis of looking to other types of sentences. *Id*.

McDonald's 50-year sentence for murdering the victim with a firearm is not grossly disproportionate. *See Byrd v. Kennedy*, No. 19 C 50184, 2020 WL 1912233, at *2 (N.D. Ill. Apr. 20, 2020) (holding 86-year sentence for murder and robbery not grossly disproportionate). Thus, the Court need not engage in the comparative analysis McDonald seeks because he cannot overcome the threshold requirement. The state court's rejection of McDonald's claim on this point was neither contrary to, nor an unreasonable application of, clearly established federal law.

McDonald's other argument implicates the Eighth Amendment's *per se* prohibition on certain types of sentences. McDonald, who was 17 years old when he committed the killing, invokes *Graham/Miller* to challenge his sentence. As previously discussed, this issue was raised to the state court on direct appeal, but the state appellate court (the last state court to address McDonald's claims on the merits) did not discuss the issue in its opinion. *Direct Appeal*, No. 2013 IL App (1st) 100905-U, 2013 WL 4538892, at \*7–\*8.

The state court must adjudicate a claim on the merits in order for the AEDPA's § 2254(d) deferential standard to apply. *Guest*, 474 F.3d at 931. For claims not resolved by the state court, the Court applies the pre-AEDPA *de novo* standard of 28 U.S.C. § 2243. *Adorno v. Melvin*, 876 F.3d 917, 921 (7th Cir. 2017). There is a presumption that the state court resolved the claim even if it is not addressed in that court's opinion unless there is an indication in the opinion, such as reliance on state procedural rules, that the state court declined to resolve the issue. *Id*. This Court, however, need not resolve the question of whether the state court adjudicated McDonald's claim on the merits, as the claim fails under the less demanding § 2243 standard.

The Eighth Amendment prohibits imposing a mandatory life sentence without the possibility of parole when the offender committed the murder as a juvenile. *McKinley v. Butler*, 809 F.3d 908, 910 (7th Cir. 2016) (citing *Miller*, 567 U.S. at 479) (internal quotation marks omitted). Although *Miller* bars a mandatory life sentence, the Seventh Circuit applies *Miller* to sentences that are long enough to be *de facto* life sentences. *McKinley*, 809 F.3d at 911. McDonald must serve 100% of his 50-year sentence, so he will be 67 years old when released from custody. That is arguably a *de facto* life sentence. *Kelly v. Brown*, 851 F.3d 686, 697 (7th Cir. 2017) (holding that prisoner who's first opportunity at release at age 70 faced *de facto* life sentence). That the

24

sentencing scheme did not mandate a life (or *de facto* life) sentence does not take the case out of *Miller's* orbit. "*Miller* requires that before sentencing a juvenile to [*de facto*] life without parole, the sentencing judge must take into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.'" *Montgomery*, 577 U.S. at 208 (quoting 567 U.S. at 480).

"*Miller* did not require the sentencer to make a separate finding of permanent incorrigibility before imposing such a sentence." *Jones v. Mississippi*, 141 S. Ct. 1307, 1316 (2021). What is required is that the defendant's youth and its attendant circumstances are considered as sentencing factors when imposing the sentence. *Id*. at 1317 (citing *Montgomery*, 577 U.S. at 210); *compare Kelly*, 851 F.3d at 687–88 (finding no *Miller* violation when sentencing court considered defendant's age as mitigating factor and had discretion to consider age in mitigation when fashioning sentence); *and Croft v. Miller*, 773 F.3d 170, 171 (7th Cir. 2014) (finding no *Miller* violation when sentencing court explicitly stated it considered presentencing report that discussed defendant's age and judge had discretion to consider age as mitigating factor); *with McKinley*, 809 F.3d at 911 (finding *Miller* violation when sentencing judge "said nothing to indicate that he thought the defendant's youth at all relevant to the sentence.").

A review of the sentencing transcript in McDonald's case, which is part of the record before this Court, shows the judge complied with *Miller*. The sentencing judge was clearly aware of McDonald's age at the time he committed the crime, as demonstrated by the fact that when the prosecutor misspoke by stating that McDonald was 19 years old when committing the murder, the sentencing judge immediately corrected him by stating that McDonald was 17-and-a-half years old. (Dkt. No. 12-6 at 79.) In imposing the sentence, the judge stated:

25

> What I'm doing in this case is this. You were 17 and a half at the time this crime occurred. I'll sentence you on the first degree to 25 years in the Illinois Department of Corrections. Now, the enhancement is a mandatory 25 years so that's a total of 50 years. That's a hundred percent time that you have to serve which will make you 69-years old when you get out of prison. ***I think that that's an appropriate sentence based upon the severity of what occurred and taking into consideration your age at the time that crime was committed.***

(Dkt. No. 12-6 at 86.) (emphasis added). Thus, it is clear that the state court considered McDonald's youth as a mitigating factor and yet still concluded that a 50-year sentence was proper. There is no *Miller* violation in this case.[5] Claim Three is accordingly denied.

### D.    Claim Four: Actual Innocence

McDonald's final argument is that he is actually innocent. It is an open question as to whether a prisoner may bring a freestanding actual innocence claim in a habeas corpus proceeding. *McQuiggin*, 569 U.S. at 392. Regardless, as previously explained above, McDonald cannot demonstrate actual innocence. The evidence supporting his first-degree murder conviction is overwhelming, as multiple eyewitnesses testified against him. McDonald's view is that the killing was an accident, but the jury rejected his testimony and this Court has no license to reexamine the jury's verdict. *Hayes*, 403 F.3d at 938 ("[I]t is black letter law that testimony of a single eyewitness suffices for a conviction even if 20 bishops testify that the eyewitness is a liar."). Claim Four is denied, and thus the habeas corpus petition is denied in its entirety.

---

[5] The Court appreciates that McDonald effectively faced a mandatory minimum sentence of 45 years, as the minimum sentence for murder was 20 years and there was also a minimum consecutive 25-year sentence for personally discharging the firearm. See *Illinois v. Reyes*, 63 N.E.3d 884, 886 (Ill. 2016) (per curiam) (discussing applicable sentencing ranges). Importantly, the sentencing court exercised its discretion to impose a sentence beyond the statutory minimums. Thus, it is clear that this case does not present the situation of a sentencing judge who desired to impose a lesser sentence but was limited by mandatory minimum sentences. The record instead demonstrates that the sentencing judge recognized his discretion to impose a lesser sentence and still decided that McDonald's 50-year sentence was proper, even when considering his youth as a mitigating factor.

## CONCLUSION

For all the reasons stated above, this Court cannot grant federal habeas relief for any of McDonald's petition for federal habeas relief is denied in its entirety. The denial of McDonald's petition is a final decision ending this case. If he wishes to appeal, he must file a notice of appeal in this Court within 30 days of when judgment is entered. Fed. R. App. P. 4(a)(1). McDonald need not bring a motion to reconsider to preserve his appellate rights, but if he wishes the Court to reconsider its judgment, he may file a motion in accordance with Federal Rules of Civil Procedure 59(e) or 60(b). A Rule 59(e) motion must be filed within 28 days of entry of judgment and suspends the deadline for filing an appeal until the motion is ruled on. *See* Rule 59(e) and Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of judgment. *See* Rule 60(c)(1). A Rule 60(b) motion suspends the deadline for filing an appeal until the motion is ruled on only if the motion is filed within 28 days of the judgment. Fed. R. App. P. 4(a)(4)(A)(vi). The time to file a Rule 59(e) or 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). Finally, the Court declines to issue a certificate of appealability. *See* Rule 11 of the Rules Governing § 2254 Cases. McDonald cannot make a substantial showing of the denial of a constitutional right and cannot show that reasonable jurists would debate, much less disagree, with this Court's resolution of his claims. *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

ENTERED:

Dated: September 2, 2021

_____

ANDREA R. WOOD
United States District Judge